UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,         )          Crim. No. 18-30001-WGY
                                  )
          vs.                     )
                                  )
DAPHNE MOORE, Defendant.          )
                                  )

DEFENDANT DAPHNE MOORE'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO SUPPRESS
UNLAWFULLY INTERCEPTED WIRE, ORAL AND ELECTRONIC
COMMUNICATIONS AND ALL EVIDENCE DERIVED DIRECTLY
OR INDIRECTLY THEREFROM

An "aggrieved person" is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."  18 USC § 2510 (11).

**DAPHNE MOORE IS AN AGGRIEVED PERSON**

On or about November 9, 2017, the government made an Application pursuant to Title III for authority to intercept certain wire and electronic communications occurring over (413) 372-3312 (hereinafter "TT#1) and (802) 495-8549 (hereinafter "TT#2).  Exhibit A [1] & [2].  TT#1 is a cell phone that was used by Nia MOORE-BUSH, Ms. MOORE's daughter; TT#2 is a cell phone that was used by Dinelson DINZEY, Ms. MOORE's son-in-law.  In the

1

Application, the cell phone used by Ms. MOORE is identified as (413) 426-6234[1].

The Application sought authorization to intercept, over TT#1 and TT#2, the

following persons whom the government identified as "Target Subjects"[2]:

    a.  NIA MOORE-BUSH;
    b.  DINELSON DINZEY;
    c.  **DAPHNE MOORE**
    d.  EDGAR JOHNSON
    e.  BENJAMIN HERRERA
    f.  TRACY PARSONS
    g.  JOSHUA MOORBY
    h.  **JENNIFER SEALS** a/k/a/ JENNIFER MOORBY
    i.  RODERICK LEWIS
    j.  JAIMESON GALLAS a/k/a Jamie
    k.  **OSCAR ROSARIO** a/k/a Os Kim
    l.  **JOSHUA FOSTER**
    m.  **ULICES GUILLERMO** a/k/a/ Peka a/k/a Peka Trained to  Go
       (PEKA)
    n.  CHRIS LNU

It appears from the discovery, that at some time before November 9,

2017, the government was informed that its Application would be, or had been,

denied, for lack of probable cause, as to some of the alleged "Target Subjects",

---

[1] Exhibit A [2] ¶ 95 - (TIII_0000167)

[2] Judge Mastroianni found no probable cause as to each of the bolded "Target Subjects", therefore interception of their communications was not authorized by the November 9, 2017 Title III Order.  Exhibit A [3]. *Gelbard v. United States*, 408 U.S. 41, at 46 (1972)   ("Except as expressly authorized in Title III, however, all interceptions of wire and oral communications are *flatly prohibited*. Unauthorized interceptions and the disclosure or use of information obtained through unauthorized interceptions are crimes, 18 U. S. C. § 2511 (1). . . .")(emphasis added).

namely: Daphne MOORE, Ulices GUILLERMO, and JENNIFER SEALS a/k/a JENNIFER MOORBY.  By MEMORANDUM IN SUPPORT OF THE GOVERNMENT'S APPLICATION FOR AN ORDER PURSUANT TO TITLE III, dated November 8, 2017, the government argued to United States District Judge Mark G. Mastroianni, that its Application did in fact establish probable cause to intercept MOORE, GUILLERMO and SEALS/MOORBY.  Exhibit A [4].  However, on November 9, 2017 at 2:52 p.m., Judge Mastroianni entered an Order in which he had "X"d out and initialed the names of five (5) of the proposed "Target Subjects", to wit: DAPHNE MOORE; JOSHUA FOSTER; JENNIFER SEALS; OSCAR ROSARIO; and ULICES GUILLERMO.  Exhibit A [3].

In relation to its November 9th Title III Application, the government sought and received an audience with Judge Mastroianni.  The government could not receive authorization to intercept Ms. Moore's communications without establishing probable cause:

> There can be no question that " judicial wiretap orders must be preceded by applications containing prescribed information, § 2518(1). The judge must make certain findings before authorizing interceptions, including the existence of probable cause, § 2518(3)." *United States v. Giordano*, 416 U.S. 505, 514 (1974).

*United States v. Cole*, 807 F.2d 262, at 267 (1st Cir. 1986).

The conference was conducted in chambers, on the record and the transcript sealed at that time.  Exhibit A [5].  AUSA Kevin O'Regan and AUSA Katharine Wagner represented the government.  The government's request to

intercept Daphne MOORE was the focus of the hearing[3] although no probable cause was found as to five (5) of the alleged Target Subjects.  Exhibit A [5] at (TIII_0000455).

With specific references to the content of the affidavit, and without interruption, Judge Mastroianni detailed the reasons for his Order as to Daphne MOORE, concluding that there had been no showing of probable cause.  Exhibit A [4], at TIII_0000465-466.

These circumstances establish that the government was fully aware that it was *not* authorized to intercept the wire and/or electronic communications of Daphne MOORE over either TT#1 or TT#2.  Nevertheless, Ms. MOORE's communications were intercepted[4], starting on November 13, 2017, the first day that the wiretap was operative.  The Affidavit of Counsel is submitted herewith, on CD, and incorporated herein as Exhibit J with Attachments: J-1 Daphne MOORE; J-2 Oscar ROSARIO; J-3 Joshua FOSTER.

Because Ms. MOORE is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the

---

[3]

The Memorandum in Support of the Government's Application For An Order Pursuant to Title III, dated November 8, 2017 focused on two (2) proposed Target Subjects in addition to DAPHNE MOORE.  Exhibit A [4].

[4]

Calls involving Oscar ROSARIO and Joshua FOSTER were also intercepted under the November 9, 2017 Order, despite the fact that Judge Mastroianni had found no probable cause as to each of them.  In fact, ROSARIO's communications were intercepted in 2017, at a minimum, on 11/14/; 11/16; 11/17; 11/25; 11/28; 11/29; 11/30; and 12/1.  See Exhibit J, Attachment J-2**.**

interception was directed"[5], she is an "aggrieved person" as defined by 18 USC §2510(11) and has standing to move "to suppress the contents of any wire or oral communications intercepted pursuant to this chapter [18 USCS §§ 2510 et seq.], or evidence derived therefrom."  18 USC § 2518(10)(a).

**CONSTITUTIONAL AND STATUTORY GROUNDS FOR SUPPRESSION**

FOURTH AMENDMENT

Ms. MOORE asserts that her communications were intercepted without a warrant and without probable cause in violation of her Fourth Amendment rights, requiring suppression of the intercepted communications and all evidence derived directly and/or indirectly therefrom.  *Alderman v. United States*, 394 U.S. 165, 176-177 (1969); *Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *United States v. Ceccolini*, 435 U.S. 268, 274 (1978)(live witness testimony can be suppressed as fruit of the poisonous tree).

Ms. MOORE further claims that her Fourth Amendment rights were violated by service on her of an Inventory Notice that failed to inform her that interception of her communications had been disapproved on November 9, 2017.  Exhibit H [1].  This failure was both a Fourth Amendment and a statutory violation.

18 USC § 2518 (8)(d)(2) requires an Inventory Notice to state "the date

---

[5]

"[A] person against whom the interception was directed" is one who is a target of surveillance.  *United States v. Oliva*, 705 F.3d 390, 395 (9th Cir. Or 2012)

of the entry and the period of authorized, approved or *disapproved interception,*

*or the denial of the application."* (emphasis added).  The Inventory Notice

served on Ms. MOORE did not inform her that although a United States District

Judge for the District of Massachusetts had signed orders authorizing the

interception of wire and electronic communications for specified telephone

numbers, that Judge had disapproved/denied authorization as to her and four

(4) others on November 9, 2017.  Exhibit H [1].

Notice of surveillance is constitutionally required under any surveillance

statute.  *United States v. Donovan*, 429 U.S. 413, 429-430 (1977); *United*

*States v. Chun*, 503 F.2d 533, 536-537 (9th Cir. 1974).   Ms. MOORE's

Inventory Notice is signed by the affiant on all three (3) Title III Affidavits, a

person who knew that the authority to intercept had been denied as to Daphne

MOORE and four (4) others[6].  The omission of this important, statutorily and

constitutionally mandated information was intentional.   The purposefully

deficient Inventory Notice deprived Ms. MOORE of information that she was

entitled to consider, *inter alia*, in making a determination whether to appear

before the grand jury[7], where she could have asserted her § 2515 claim of

---

[6]

The Notice served on Oscar ROSARIO is identical to the one served on Ms. Moore and therefore suffers from the same relevant omission.   Exhibit H [2] Authority to intercept Mr. ROSARIO's communications was also denied/disapproved on November 9, 2017.  Exhibit A [3].

[7]

Ms. Moore received a "target" letter dated November 9,  2018 inviting her

unlawful interception.  *Gelbard v. United States*, 408 U.S. 41, 46-47 (1972).

Violations of 18 USC § 2518(8)(d) should not go unremedied where either an unintentional violation results in prejudice to an interceptee or "when the statutory violation arose from a conscious decision by the federal authorities to violate the law."  *United States v. Harrigan*, 557 F.2d 879, at 884 (1st Cir. 1977)(suppression required); *United States v. Eastman*, 465 F.2d 1057, 1063 (3rd Cir. 1972); *United States v. Chun*, 503 F.2d 533, 541 (9th Cir. 1974).   The purposefully deficient Inventory Notice, like the unauthorized interceptions, arose from a conscious decision to violate the law and calls for suppression of the wiretap evidence.

THE STATUTE - 18 U.S.C. §§ 2510 et seq

The statutory grounds for suppression are broader and less personal than the grounds afforded by the Fourth Amendment.  18 USC § 2515 provides that:

> Whenever *any* wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof *if the disclosure of that information would be in violation of this chapter* [18 USCS §§ 2510 et seq.]. (emphasis added).

Despite the judge's conclusion that the Application failed to establish the probable cause required by § 2518(3)(a), during the effective period of the

---

to testify before the grand jury in this matter. Exhibit I.  She did not accept the invitation.  She was indicted on December 20, 2018.

November 9th Order, Daphne MOORE,  Joshua FOSTER and Oscar ROSARIO were intercepted.   Exhibit J.

In this case, the  § 2515 violation is the knowing, intentional and purposeful interception of the communications of persons as to each of whom Judge Mastroianni had found no probable cause.  The challenged intercepts were plainly unlawful under the terms of the November 9th Order because they were unsupported by  probable cause.  The government acted in bad faith by intercepting the communications of Ms. MOORE, Mr. FOSTER and Mr. ROSARIO. The absence of statutory probable cause[8] was not a post hoc determination made on appellate review; it was the real time determination of the district judge to whom the application was made.

The  government was informed, before the intercepts began, that it had failed to make the requisite showing required to intercept the communications of five (5) of its alleged Target Subjects.  As to each of these individuals, the disclosure of the information obtained through interception of their communications is "in violation of this chapter [18 USC § 2510]."  This flagrant violation of the initial Title III Order calls for an appropriately bold remedy. Because each subsequent Title III Application was infected by the violation of the initial November 9th Order, the government should be prohibited from using

---

[8]

Fourth Amendment probable cause and the probable cause standards in 18 USC § 2518 are "co-extensive". *United States v. Perez-Trevino*, 891 F.3d 359, at 168 (8th Cir. 2018).

any of the evidence obtained, directly or indirectly, from any of the three (3)

Title III orders.

### I. The Communications Unlawfully Intercepted in Violation of the Fourth Amendment and 18 USC §2518(10)(a)(i)

Ms. MOORE's communications were unlawfully intercepted.    The

government failed, in its initial Application of November 9, 2017,  to establish

probable cause to intercept her communications.   Judge Mastroianni made an

explicit finding of no probable cause to believe that Ms. MOORE was engaged

in the specified unlawful activity. In Agent Bzduch's second Title III Affidavit,

November 27, 2017, he acknowledged that subsequently obtained information

failed to add to its case for probable cause:

> The government's Application of November 9, 2017 and my [Christopher Bzduch] supporting Affidavit listed DAPHNE MOORE ("MOORE") . . . [and others] as Target Subjects. Judge Mastroianni declined to find probable cause for these Target Subjects and crossed their names out of his Order of November 9, 2017. Because we have no (sic) little information relating to these individuals since submitting the November 9, 2017 Affidavit, we do not include them as Target Subjects here or in the government's Application and proposed Order.

Exhibit B [2] at TIII_0000018, fn 1.

Judge Mastroianni's November 9th Order modified the government's

proposed order based on his finding that the application did   not establish

probable cause for intercepting the communications of Ms. MOORE and four

others.  18 USC § 2518 (3).[9]   Thus the November 9th Order embodied both an intercept authorization and an intercept denial/prohibition.  Interception of the communications of Daphne MOORE, Joshua FOSTER, Jennifer SEALS a/k/a/ Jennifer MOORBY, Oscar ROSARIO a/k/a/ "Os Kino" and Ulices GUILLERMO was explicitly prohibited by the "X"ing out of their names.  Exhibit A [3]. Ms. MOORE's communications were therefore unlawfully intercepted in purposeful and intentional violation of Judge Mastroianni's Order.  The same is true for the interception of the communications of Oscar ROSARIO and Joshua FOSTER. See generally, Exhibit A [3].

If the government believed that Judge Mastroianni erred in excluding Ms. MOORE and/or four (4) others from the intercept authorization, it had available an immediately available appellate remedy:

> **(b)**  In addition to any other right to appeal, **the United States shall have the right to appeal from an order** granting a motion to suppress made under paragraph (a) of this subsection, **or the denial of an application for an order of approval**, if the United States attorney shall certify to the judge or other official granting such motion **or denying such application** that the appeal is not taken for purposes of delay. Such appeal shall be taken **within thirty days** after the date the order was entered and shall be diligently prosecuted. (emphasis added)

---

[9]

Upon such application the judge may enter an ex parte order, as requested or *as modified*, authorizing or approving interception of wire, oral, or electronic communications . . . .  if the judge determines on the basis of the facts submitted by the applicant that--
    (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter; 18 USC § 2518 (3). (emphasis supplied).

18 USC §2518 (10)(b). Rather than challenge Judge Mastroianni's partial denial of its Title III Application, the government elected to violate the Order by intercepting Ms. MOORE's communications, all the while acknowledging its lack of probable cause.[10] See Exhibit B [1] at TIII_0000093, n. 1.

The requirements of Title III are designed and intended to protect individual, personal privacy:

> The Senate committee report that accompanied Title III underscores the congressional policy:

> "Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized. To assure the privacy of oral and wire communications, title III *prohibits* all wiretapping and electronic surveillance by persons other than *duly authorized* law enforcement officers engaged in the investigation or prevention of specified types of serious crimes, and *only after authorization of a court order obtained after a showing and finding of probable cause*." S. Rep. No. 1097, 90th Cong., 2d Sess., 66

---

[10]

In its 12/14/17 Application, AUSA Newhouse acknowledged that the Court "declined to find probable cause" for several Target Subjects, including DAPHNE MOORE and OSCAR ROSARIO. For this reason, they were not included as Target Subjects in the 12/14/17 Application, Affidavit or in the proposed Order. Application, M.B.D. 17mc93020-MGM, 12/14/17 Exhibit C [2] at TIII_0000468, fn 1). Similar information was set out in the supporting Affidavit of ATF Agent Bzduch, except that OSCAR ROSARIO is omitted. Exhibit C [2] at TIII_0000352 FN. 2. However, the Affiant asserted that "further evidence of MOORE's involvement is set out forth in paragraphs 82 and 88 of this Affidavit." Exhibit C [2], *Id*. That "further evidence" consists of transcriptions of intercepted communications between Nia MOORE-BUSH and DAPHNE MOORE. Exhibit C [2] at TIII_0000390-391 (¶ 82) and TIII_0000393-394 (¶ 88.) These interceptions are unlawful as having been seized without probable cause and without judicial authorization.

(1968).  (emphasis supplied).

*Gelbard v. United States*, 408 U.S. 41, at 48 (1972); *United States v. Cartagena*, 593 F.3d 104, 108 n.1 (1st Cir. 2010).  This dual purpose is obviously defeated by the interception of the communications of persons as to whom a court of competent jurisdiction has made an explicit finding of no probable cause.

A finding of probable cause for issuance of a search warrant is an explicit requirement of both the Fourth Amendment and 18 USC § 2518 (3)(a) and (b).[11]  See, *United States v. Bannerman*, 2005 U.S.Dist.LEXIS 21628, *8 (D Mass 2005)("It is axiomatic that in order to obtain a wiretap pursuant to Title III, as when seeking a search warrant, the government must make a showing

---

[11]

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no Warrants shall issue, but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.  Fourth Amendment to the United States Constitution.  (emphasis supplied).

18 USC § 2518  (3)  Upon such application the judge may enter an ex parte order. . . authorizing or approving interception of wire, oral, or electronic communications . . .  if the judge determines on the basis of the facts submitted by the applicant that--

(a**)**  *there is probable cause* for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter [18 USCS § 2516];

(b)  *there is probable cause* for belief that particular communications concerning that offense will be obtained through such interception . . . . (emphasis supplied).

12

of probable cause."); *United States v. Cole*, 807 F.2d 262, 267  (1ˢᵗ Cir.

1986)("The judge must make certain findings before authorizing interceptions,

including the existence of probable cause, § 2518(3).", quoting *United States*

*v. Giordano*, 416 U.S. 505, 514 (1974)).

### II.  Suppression is the Appropriately Mandated Remedy

> [A]lthough Title III authorizes invasions of individual privacy under certain circumstances, the protection of privacy was an overriding congressional concern.  Indeed, the congressional findings articulate clearly the intent to utilize the evidentiary prohibition of § 2515 to enforce the limitations imposed by Title III upon wiretapping and electronic surveillance[.]

*Gelbard*, Id.

18 USC §2515 enunciates an exclusionary rule:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any *trial*, hearing, or other proceeding in or before any court, *grand jury*, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter [18 USCS §§ 2510 et seq.]. (emphasis supplied).

*United States v. Eastman,* 465 F.2d 1057, 1061 (3ʳᵈ Cir. 1972)("That § 2515

is exclusionary is now settled beyond all doubt by *Gelbard v. United States,* and

*United States v. Egan*, 408 U.S. 41, 92 S. Ct. 2357, 33 L. Ed. 2d 179 (1972)")

"What disclosures are forbidden, and are subject to motions to suppress,

is in turn governed by § 2518 (10)(a) . . . ."  *United States v. Giordano*, 416

U.S. 505, at 524 (1974).  The term "unlawfully intercepted" encompasses both

constitutional violations and "those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device."   *Giordano*, supra at 527 (1974). Communications intercepted absent a showing of probable cause are unlawfully intercepted.   *United States v. Giordano*, 416 US 505, 525 (1974).   The unlawfully intercepted communications and all evidence derived therefrom must be excluded from evidence.   18 USC §2518(10)(a)(i); 18 USC § 3504[12]; *Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

III.   Unlawfully Intercepted Communications and Derivative Evidence

The Title III Order of November 9, 2017 (Exhibit A[3]) prohibited the government from intercepting the communications of Daphne MOORE, Joshua FOSTER and Oscar ROSARIO.   The Title III Application of November 27, 2017 renewed the request to intercept Joshua FOSTER's communications and that

---

[12]

(a)  In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States--

(1)  upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, *the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act*;
* * * *
(b)  As used in this section *"unlawful act" means* any act [involving] the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title [18 USCS § 2510(5)]) *in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto*. (emphasis supplied).

14

request was granted.  Exhibit B [3].[13]   In support of the request to intercept FOSTER, Agent Bzduch included in his Affidavit a transcript of an intercepted communication between MOORE-BUSH and FOSTER that occurred on November 16, 2017.  Exhibit B [2] at TIII_0000054-58 (¶76).  The government was prohibited by the November 9th Order from intercepting FOSTER's communications on this date.  Exhibit A [3]**.**

Interpreting this unlawfully intercepted communication, Agent Bzduch concluded that "FOSTER is holding narcotics, which he is distributing to GALLAS, PARSONS, and others on behalf of MOORE-BUSH and DINZEY and organizing the collection of drug proceeds on behalf of MOORE-BUSH and DINZEY." Exhibit B [2] at TIII_0000055.  Agent Bzduch further concluded that "FOSTER is describing a drug ledger that he keeps on behalf of MOORE-BUSH and DINZEY." Exhibit B [2] at TIII_0000057.  Finally, the agent concluded from the interception that MOORE-BUSH was planning to withdraw $10,000 in cash for the purpose of purchasing narcotics**.**  Exhibit B [2] at TIII_0000058.  This same unlawfully intercepted communication was played for the grand jury that returned the original indictment on January 11, 2018.  Exhibit G at GJ_0000107.  Those unlawful interceptions also provided the basis for Agent

---

[13]

Judge Mastroianni's Order of November 27, 2017 (Order #2) authorized interception of the communications of: MOORE-BUSH; DINZEY; Joshua FOSTER; Tracy PARSONS; Jaimeson GALLAS; Joshua MOORBY; Roderick LEWIS; Benjamin HERRERA; Edgar JOHNSON; Christopher MARTINEZ; and others as yet unknown ("Target Subjects").  TIII_0000112.

Bzduch's description of FOSTER's role in the organization.    Exhibit G at TIII_0000105.

The unlawfully intercepted communication between FOSTER and MOORE-BUSH, was directed against Daphne MOORE[14], among others, and coordinated with the unlawful interception of Ms. MOORE's communications.  The first 10-Day Report  included a synopsis of the interception of Ms. MOORE's 11/17/17 communication with her daughter, MOORE-BUSH:

> On November 17, 2017, a call was intercepted (call number 437) on TARGET TELEPHONE 1 with a number used by DAPHNE MOORE (413-426-6234).  In the call, MOORE-BUSH tells her mom that she needs her (MOORE) to make a telephone call to re-raise the limits.  Based on the investigation thus far I believe that MOORE-BUSH is referring to the limits on the TD Bank account that MOORE holds in trust for MOORE-BUSH.

Exhibit D [1] at TIII_0000483.

Ms. MOORE never ceased to be a "Target Subject" throughout the duration of the investigation for which the Title III Orders were obtained.[15] Each of the Title III Orders was directed at her, even though she was not named as a person for whom the government possessed probable cause to believe that she was engaged in the offenses that were the subject of the

---

[14]

"[A]ggrieved person" means a person who was a party to any intercepted wire, oral, or electronic communication or a *person against whom the interception is directed*."  18 USC § 2510 (11)(emphasis supplies).

[15]

The term "Target Subject" falls squarely within the meaning of "aggrieved person", that is, "a person against whom the interception is directed."  18 USC § 2510 (11).

wiretaps - the government having been rebuffed with regard to its initial effort. Under the unique circumstances of this case, all of the wiretap evidence and derivative evidence is inadmissible at Ms. MOORE's trial because "it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act."  18 USC § 3504; 18 USC § 2518 (10)(a)(i); see, *Carpenter v. United States,* 138 S.Ct. 2006, 2014 (2018).

The warrantless interception of communications of Ms. MOORE, Joshua FOSTER and Oscar ROSARIO was unlawful.  The original Title III Order, November 9, 2017, on its face, specifically prohibited interception of the communications of these three (3) people for lack of probable cause**.**  Exhibit A [3] & [5].  The exploitation of these unlawful acts led to the issuance of subsequent Title III Orders, search warrants for Ms. MOORE's home and cell phone and the seizure of physical evidence such as FOSTER's alleged drug ledger.

Conclusion

The violations of the Fourth Amendment and statutory rights of MOORE, ROSARIO, and FOSTER were of critical importance to the investigation in the opening days of the wiretap.  For example, on November 16, 2017, FOSTER was intercepted discussing weights/amounts of drugs delivered/sold amounts of money he owed and that others owed.  Exhibit E [1] at TIII_0000483.  The unlawfully intercepted communications informed the entire investigation.

Evidence derived from the unlawful interception is substantial and was collected by government agents without regard to the limitations imposed by the November 9, 2017 Order.  This illegality infected the entire wiretap, requiring suppression of the direct and derivative evidence.

Respectfully submitted,
DAPHNE MOORE, Defendant

Linda J. Thompson, BBO #496840
Her Attorney
THOMPSON & THOMPSON, P.C.
1331 Main Street
Springfield, MA 01103
(413) 739-2100
Fax: (413) 739-2300
Email: linda@ttpclaw.com

Certificate of Service

I certify that on April 22, 2019 I filed the foregoing document with the Court via the CM/ECF system, which will cause notice to be delivered electronically to all registered participants, and that I further sent paper copies to those indicated on the docket as non-registered participants, if any.

Linda J. Thompson, BBO # 496840

19