UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,                              Crim. No. 18-30001-WGY

Vs.

OSCAR ROSARIO, Defendant.

---

**DEFENDANT OSCAR ROSARIO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS UNLAWFULLY INTERCEPTED WIRE, ORAL, AND ELECTRONIC COMMUNICATIONS AND ALL EVIDENCE DERIVED DIRECTLY OR INDIRECTLY THEREFROM**

---

An "aggrieved person" is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 USC § 2510 (11).

**OSCAR ROSARIO IS AN AGGRIEVED PERSON**

On or about November 9, 2017, the government made an Application pursuant to Title III for authority to intercept certain wire and electronic communications occurring over (413) 372-3312 (hereinafter "TT#1") and (802) 495-8549 (hereinafter "TT#2). TT#1 is a cell phone that was used by Nia MOORE-BUSH, Ms. MOORE's daughter; TT#2 is a cell phone that was used by Dinelson DINZEY, Ms. MOORE's son-in-law. In the Application, the cell phone used by Ms. MOORE is identified as (413) 426-6234[1]. The Application sought authorization to

---

[1] Paragraph 95 of the 11/09/17 Title III Application. (TIII_0000167)

1

intercept, over TT#1 and TT#2, the following persons whom the government identified as "Target Subjects"[2]:

    a. NIA MOORE-BUSH;
    b. DINELSON DINZEY;
    c. **DAPHNE MOORE**
    d. EDGAR JOHNSON
    e. BENJAMIN HERRERA
    f. TRACY PARSONS
    g. JOSHUA MOORBY
    h. **JENNIFER SEALS** a/k/a/ JENNIFER MOORBY
    i. RODERICK LEWIS
    j. JAIMESON GALLAS a/k/a Jamie
    k. **OSCAR ROSARIO** a/k/a Os Kino
    l. **JOSHUA FOSTER**
    m. **ULICES GUILLERMO** a/k/a/ Peka a/k/a Peka Trained to Go (PEKA)
    n. CHRIS LNU

Based on the discovery, it appears that at some time before November 9, 2017, the government was informed that its Application would be, or had been, denied for lack of probable cause as to some of the alleged "Target Subjects", namely: Daphne MOORE, Ulices GUILLERMO, and Jennifer SEALS a/k/a Jennifer MOORBY. By MEMORANDUM IN SUPPORT OF THE GOVERNMENT'S APPLICATION FOR AN ORDER PURSUANT TO TITLE III, dated November 8, 2017, the government argued to United States District Judge

---

[2] Judge Mastroianni found no probable cause as to each of the bolded "Target Subjects", therefore interception of their communications was not authorized by the November 9, 2017 Title III Order. **Exhibit A**. *Gelbard v. United States*, 408 US 41, at 46 (1972) ("Except as expressly authorized in Title III, however, all interceptions of wire and oral communications are flatly prohibited. Unauthorized interceptions and the disclosure or use of information obtained through unauthorized interceptions are crimes, 18 U. S. C. § 2511 (1). . . .")

Mark G. Mastroianni, that its Application did in fact establish probable cause to intercept MOORE, GUILLERMO and SEALS/MOORBY.[3] However, on November 9, 2017 at 2:52 p.m., Judge Mastroianni entered an Order in which he had "X"d out and initialed the names of five (5) of the proposed "Target Subjects", to wit: Daphne MOORE; Joshua FOSTER; Jennifer SEALS; Oscar ROSARIO; and Ulices GUILLERMO. A copy of Judge Mastroianni's November 9, 2017 Order is submitted herewith as Defendant's **Exhibit A (TIII_0000305-315)**.

In relation to its November 9th Title III Application, the government sought and received an audience with Judge Mastroianni. The government understood that it could not receive authorization to intercept Ms. Moore's communications without establishing probable cause:

> There can be no question that " judicial wiretap orders must be preceded by applications containing prescribed information, § 2518(1). The judge must make certain findings before authorizing interceptions, including the existence of probable cause, § 2518(3)." *United States v. Giordano*, 416 U.S. 505, 514 (1974).

*United States v. Cole*, 807 F.2d 262, at 267 (1st Cir. 1986).

The conference was conducted in chambers, on the record and the transcript sealed at that time. A copy of the transcript is submitted herewith as Defendant's **Exhibit B (TIII_0000454-466)**. The Clerk announced: "We are here for a hearing regarding a Title III application." AUSA Kevin O'Regan and AUSA Katharine Wagner represented the government. The

---

[3] Document 11, Case 3:17-mc-93018-MGM.

government's request to intercept only Daphne MOORE was the focus of the hearing[4]. At the beginning of the conference, Judge Mastroianni stated: "There were five individuals included in the government's proposed order that I have found there to be *no probable cause*" (emphasis added). **Exhibit B**, p. 2 (TIII_0000455).

With specific references to the content of the affidavit, and without interruption, Judge Mastroianni detailed the reasons for his Order as to Daphne MOORE only, concluding with:

> That summarizes and highlights my evaluation of my making the determination that there is *no probable cause as to Daphney (sic) Moore*. All right? (emphasis added).

**Exhibit B**, pp. 12-13 (TIII_0000465-466).

Judge Mastroianni did not detail the reasons for finding lack of probable cause as to any of the other codefendants other than Ms. MOORE because the government did not ask him to do so.

These circumstances establish that the government was fully aware and understood that it was *not* authorized to intercept the wire and/or electronic communications of Oscar ROSARIO over either TT#1 or TT#2. Nevertheless, Mr.

---

[4] The Memorandum in Support of the Government's Application for an Order Pursuant to Title III, dated November 8, 2017 focused on three (3) proposed Target Subjects: DAPHNE MOORE; ULICES GUILLERMO; and JENNIFER SEALS. (TIII_0002169-2178) Case 3:17-mc-93018-MGM Document 11.

ROSARIO's communications were intercepted[5], starting on November 13, 2017, the first day that the wiretap was operative.

Because Mr. ROSARIO is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed"[6], he is an "aggrieved person" as defined by 18 USC §2510 (11) and has standing to move "to suppress the contents of any wire or oral communication intercepted pursuant to this chapter [18 USCS §§ 2510 et seq.], or evidence derived therefrom."  18 USC § 2518(10)(a).

## GROUNDS FOR SUPPRESSION

### 4th Amendment

Mr. ROSARIO asserts that his communications were intercepted without a warrant and without probable cause in violation of his Fourth Amendment rights, requiring suppression of the intercepted communications and all evidence derived directly and/or indirectly therefrom. *Alderman v. United States*, 394 U.S. 165, 176-177 (1969); *Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

Mr. ROSARIO further claims that his Fourth Amendment rights were violated by service of an Inventory Notice that failed to inform him that interception of his communications had

---

[5] Calls involving Oscar ROSARIO and Joshua FOSTER were also intercepted under the November 9, 2017 Order, despite the fact that Judge Mastroianni had found no probable cause as to each of them.  In fact, ROSARIO's communications were intercepted in 2017, at a minimum, on 11/14/; 11/16; 11/17; 11/25; 11/28; 11/29; 11/30; and 12/1.  See **Exhibit C**.

[6] [A] person against whom the interception was directed" is one who is a target of surveillance.  *United States v. Oliva*, 705 F.3d 390, 395 (9th Cir. Or 2012)

been disapproved on November 9, 2017.  This failure was both a Fourth Amendment and a statutory violation.  18 USC § 2518 (8)(d)(2) requires an Inventory Notice to state "the date of the entry and the period of authorized, approved or *disapproved interception*, *or the denial of the application."*  The Inventory Notice served on Mr. ROSARIO did not inform her that although a United States District Judge for the District of Massachusetts had signed orders authorizing the interception of wire and electronic communications for specified telephone numbers, that Judge had disapproved/denied authorization as to her on November 9, 2017 (**Inventory Notice**).

Notice of surveillance is constitutionally required under any surveillance statute.  *United States v. Donovan*, 429 U.S. 413, 429-430 (1977); *United States v. Chun*, 503 F.2d 533, 536-537 (9th Cir. 1974).  Mr. ROSARIO's Inventory Notice is signed by the affiant on all three (3) Title III Affidavits, a person who knew that the authority to intercept had been denied as to Oscar ROSARIO and four (4) others[7].  The omission of this important, statutorily and constitutionally mandated information was intentional.  The purposefully deficient Inventory Notice deprived Mr. ROSARIO of information that he was entitled to consider in making a determination whether to appear before the grand jury[8], where she could have asserted her § 2515 claim of unlawful interception.  *Gelbard v. United States*, 408 U.S. 41, 46-47 (1972).

---

[7]The Notice served on Daphne MOORE is identical to the one served on Mr. Rosario and therefore suffers from the same relevant omission. Authority to intercept Ms. MOORE's communications was also denied/disapproved on November 9, 2017.

[8]Ms. Moore received a "target" letter dated November 9, 2018 inviting her to testify before the grand jury in this matter.  (**Grand jury 11/9/18 ltr**).  She did not accept the invitation.  She was indicted on December 20, 2018.

The statutory grounds for suppression are broader and less personal than the grounds afforded by the Fourth Amendment. 18 USC § 2515 provides that:

> Whenever *any* wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof *if the disclosure of that information would be in violation of this chapter* [18 USCS §§ 2510 et seq.]. (emphasis added).

During the effective period of the November 9th Order, Oscar ROSARIO, Joshua FOSTER and Daphne MOORE were intercepted despite the judge's conclusion that the Application failed to establish the probable cause required by § 2518(3)(a) (**Exhibit C**).

In this case, the violation addressed in § 2515 was knowing, intentional and purposeful. The challenged intercepts were plainly unlawful under the terms of the November 9th Order because they were unsupported by probable cause. The government acted in bad faith by intercepting the communications of Mr. ROSARIO, Mr. FOSTER and Ms. MOORE. The absence of statutory probable cause was not a post hoc determination on appellate review; it was the real time determination of the district judge.

The government was informed, before the intercepts began, that it had failed to make the requisite showing required to intercept the communications of five (5) of its alleged Target Subjects. As to each of these individuals, the disclosure of the information obtained through interception of their communications is "in violation of this chapter." This flagrant violation of the initial Title III Order calls for an appropriately bold remedy. Because each subsequent Title

III Application was infected by the violation of the initial November 9th Order, the government should be prohibited from using any of the evidence obtained, directly or indirectly, from any of the three (3) Title III orders.

**CONSTITUTIONAL AND STATUTORY GROUNDS FOR SUPPRESSION**

I. <u>The Communications Unlawfully Intercepted in Violation of the Fourth Amendment and 18 USC §2518(10)(a)(i)</u>

Mr. ROSARIO's communications were unlawfully intercepted as a result of the government's failure, in its initial Application of November 9, 2017, to establish probable cause to intercept his communications.  Judge Mastroianni made an explicit finding of no probable cause to believe the named individuals had engaged in the specified unlawful activity. In Agent Bzduch's second Title III Affidavit, November 27, 2017, he acknowledged that subsequently obtained information failed to add to its case for probable cause:

> The government's Application of November 9, 2017 and my [Christopher Bzduch] supporting Affidavit listed DAPHNE MOORE ("MOORE") . . . [and others] as Target Subjects.  Judge Mastroianni declined to find probable cause for these Target Subjects and crossed their names out of his Order of November 9, 2017.  Because we have no (sic) little information relating to these individuals since submitting the November 9, 2017 Affidavit, we do not include them as Target Subjects here or in the government's Application and proposed Order.

Affidavit of Agent Bzduch [Title III], November 27, 2017, p. 8, fn 1 - Affidavit pages one (1) through nine (9) are submitted herewith as Defendant's **Exhibit D**; see also Title III Application of AUSA Wagner, dated November 27, 2017, TIII_0000092-0000110, fn 1.

8

Judge Mastroianni's November 9th Order modified the government's proposed order based on his finding that the application did not establish probable cause for intercepting the communications of Mr. ROSARIO and four others.  18 USC § 2518 (3).[9]  Thus the November 9th Order embodied both an intercept authorization and an intercept denial/prohibition.  Interception of the communications of Oscar ROSARIO a/k/a "Os Kino," Joshua FOSTER, Jennifer SEALS a/k/a/ Jennifer MOORBY, Daphne MOORE, and Ulices GUILLERMO was explicitly prohibited by the "X"ing out of their names. Mr. ROSARIO's communications were therefore unlawfully intercepted in purposeful and intentional violation of Judge Mastroianni's Order.  The same is true for the interception of the communications of Daphne MOORE and Joshua FOSTER.  See generally **Exhibit B.**

If the government believed that Judge Mastroianni erred in excluding Mr. ROSARIO and/or four (4) others from the intercept authorization, it had available an appellate remedy:

> **(b)**  In addition to any other right to appeal, **the United States shall have the right to appeal from an order** granting a motion to suppress made under paragraph (a) of this subsection, **or the denial of an application for an order of approval**, if the United States attorney shall certify to the judge or other official granting such motion **or denying such application** that the appeal is not taken for purposes of delay. Such appeal shall be taken **within thirty days** after the date the order was entered and shall be diligently prosecuted.

---

[9] Upon such application the judge may enter an ex parte order, as requested or *as modified*, authorizing or approving interception of wire, oral, or electronic communications . . . . if the judge determines on the basis of the facts submitted by the applicant that (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter; 18 USC § 2518 (3). (emphasis supplied).

18 USC §2518 (10)(b). Rather than challenge Judge Mastroianni's partial denial of its Title III Application, the government elected instead to violate the Order by intercepting Mr. ROSARIO's communications, all the while acknowledging its lack of probable cause.[10]  See **Exhibit D**.

The requirements of Title III are designed and intended to protect individual, personal privacy:

> The Senate committee report that accompanied Title III underscores the congressional policy:
>
> "Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized. To assure the privacy of oral and wire communications, title III *prohibits* all wiretapping and electronic surveillance by persons other than *duly authorized* law enforcement officers engaged in the investigation or prevention of specified types of serious crimes, and *only after authorization of a court order obtained after a showing and finding of probable cause*." S. Rep. No. 1097, 90th Cong., 2d Sess., 66 (1968) (emphasis supplied).

*Gelbard v. United States*, 408 U.S. 41, at 48 (1972); *United States v. Cartagena*, 593 F.3d 104, 108 n.1 (1st Cir. 2010).  This dual purpose is obviously defeated by the interception of the

---

[10] In its 12/14/17 Application, AUSA Newhouse acknowledged that the Court "declined to find probable cause" for several Target Subjects, including Oscar ROSARIO and Daphne MOORE. For this reason, they were not included as Target Subjects in the 12/14/17 Application, Affidavit or in the proposed Order. Application, M.B.D. 17mc93020-MGM, 12/14/17 (TIII_0000468, fn 1). Similar information was set out in the supporting Affidavit of ATF Agent Bzduch, except that OSCAR ROSARIO is omitted from his footnote 2. However, the Affiant asserted that "further evidence of MOORE's involvement is set out forth in paragraphs 82 and 88 of this Affidavit." (TIII_0000352, fn 2). That "further evidence" consists of transcriptions of intercepted communications between Nia MOORE-BUSH and DAPHNE MOORE. (TIII_0000390-391, ¶ 82 and TIII_0000393-394, ¶ 88.)  These interceptions are unlawful as having been seized without probable cause and without judicial authorization.

communications of persons as to whom a court of competent jurisdiction has made an explicit finding of no probable cause.

A finding of probable cause for issuance of a search warrant is an explicit requirement of both the Fourth Amendment and 18 USC § 2518 (3)(a) and (b).[11]  See *United States v. Bannerman*, 2005 U.S.Dist.LEXIS 21628, *8 (D Mass 2005)("It is axiomatic that in order to obtain a wiretap pursuant to Title III, as when seeking a search warrant, the government must make a showing of probable cause."); *United States v. Cole*, 807 F.2d 262, 267  (1st Cir. 1986)("The judge must make certain findings before authorizing interceptions, including the existence of probable cause, § 2518(3).", quoting *United States v. Giordano*, 416 U.S. 505, 514 (1974)).

II. Suppression is the Appropriately Mandated Remedy

> [A]lthough Title III authorizes invasions of individual privacy under certain circumstances, the protection of privacy was an overriding congressional concern. Indeed, the congressional findings articulate clearly the intent to utilize the evidentiary prohibition of § 2515 to enforce the limitations imposed by Title III upon wiretapping and electronic surveillance [.]

*Gelbard*, Id.

---

[11] The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no Warrants shall issue, but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.  Fourth Amendment to the United States Constitution (emphasis supplied).  18 USC § 2518 (3) Upon such application the judge may enter an ex parte order. . . authorizing or approving interception of wire, oral, or electronic communications . . .  if the judge determines on the basis of the facts submitted by the applicant that:

(a)  *there is probable cause* for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter [18 USCS § 2516];

(b)  *there is probable cause* for belief that particular communications concerning that offense will be obtained through such interception . . . . (emphasis supplied).

18 USC §2515 enunciates an exclusionary rule:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any *trial*, hearing, or other proceeding in or before any court, *grand jury*, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter [18 USCS §§ 2510 et seq.].  (emphasis supplied).

*United States v. Eastman,* 465 F.2d 1057, 1061 (3rd Cir. 1972)("That § 2515 is exclusionary is now settled beyond all doubt by *Gelbard v. United States,* and *United States v. Egan*, 408 U.S. 41, 92 S. Ct. 2357, 33 L. Ed. 2d 179 (1972)")

"What disclosures are forbidden, and are subject to motions to suppress, is in turn governed by § 2518 (10)(a) . . . ." *United States v. Giordano*, 416 U.S. 505, at 524 (1974).  The term "unlawfully intercepted" encompasses both constitutional violations and "those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *Giordano*, supra at 527 (1974).  Communications intercepted absent a showing of probable cause are unlawfully intercepted. *United States v. Giordano*, 416 US 505, 525 (1974).  The unlawfully intercepted communications and all

evidence derived therefrom must be excluded from evidence. 18 USC §2518(10)(a)(i); 18 USC § 3504[12]; *Wong Sun v. United States*, 371 US 471, 485 (1963).

### III. Unlawfully Intercepted Communications and Derivative Evidence

The Title III Order of November 9, 2017 (Order #1) prohibited the government from intercepting the communications of Daphne MOORE, Joshua FOSTER and Oscar ROSARIO. The Title III Application of November 27, 2017 renewed the request to intercept Joshua FOSTER's communications and that request was granted. A copy of the 11/2/17 Title III intercept Order (Order #2)[13] in submitted herewith and incorporated as Defendant's **Exhibit E**. In support of the request to intercept FOSTER, Agent Bzduch included in his Affidavit a transcript of an intercepted communication between MOORE-BUSH and FOSTER that occurred on November 16, 2017. Affidavit of Agent Bzduch, November 27, 2017, ¶76, TIII_0000054-58. A copy of pp. 44-48 of Agent Bzduch's 11/27/17 Affidavit is submitted herewith as Defendant's **Exhibit F.** The government was prohibited by Order #1 from intercepting FOSTER's communications on this date. **Exhibit A.**

---

[12](a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States--

(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, *the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act*;

* * * *

(b) As used in this section *"unlawful act" means* any act [involving] the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title [18 USCS § 2510(5)]) *in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto*. (emphasis supplied).

[13] Judge Mastroianni's Order of November 27, 2017 (Order #2) authorized interception of the communications of: MOORE-BUSH; DINZEY; Joshua FOSTER; Tracy PARSONS; Jaimeson GALLAS; Joshua MOORBY; Roderick LEWIS; Benjamin HERRERA; Edgar JOHNSON; Christopher MARTINEZ; and others as yet unknown ("Target Subjects"). See **TIII_0000112**.

Interpreting this unlawfully intercepted communication, Agent Bzduch concluded that "FOSTER is holding narcotics, which he is distributing to GALLAS, PARSONS, and others on behalf of MOORE-BUSH and DINZEY and organizing the collection of drug proceeds on behalf of MOORE-BUSH and DINZEY." **Exhibit F**, pp. 44-45. Agent Bzduch further concluded that "FOSTER is describing a drug ledger that he keeps on behalf of MOORE-BUSH and DINZEY." **Exhibit F**, p. 47. Finally, the agent concluded from the interception that MOORE-BUSH was planning to withdraw $10,000 in cash for the purpose of purchasing narcotics. **Exhibit F**, p. 48. This same unlawfully intercepted communication was played for the grand jury that returned the initial indictment on January 11, 2018. See **GJ_0000680**.

The unlawfully intercepted communication between FOSTER and MOORE-BUSH, was directed against Daphne MOORE[14], among others, and coordinated with the unlawful interception of Ms. MOORE's communications. The first 10-Day Report required by Order #1 (Exhibit A, p. 10 (TIII_0000314)) included reference to the interception of Ms. MOORE's 11/17/17 communication with her daughter, MOORE-BUSH. A copy of the first 10-Day Report dated 11/22/17 is submitted herewith and incorporated as Defendant's **Exhibit G** (**TIII_0000482-484**).

As a result of the unauthorized interception of FOSTER's communication with MOORE-BUSH on 11/16/17, Agent Bzduch concluded that MOORE-BUSH was planning to withdraw

---

[14] "[A]ggrieved person" means a person who was a party to any intercepted wire, oral, or electronic communication or a *person against whom the interception is directed.*" 18 USC § 2510 (11)(emphasis supplies).

$10,000 in cash to buy narcotics.  **Exhibit F**, p. 48.  The next day, the government unlawfully intercepted the communication summarized below:

> On November 17, 2017, a call was intercepted (call number 437) on TARGET TELEPHONE 1 with a number used by DAPHNE MOORE (413-426-6234).  In the call, MOORE-BUSH tells her mom that she needs her (MOORE) to make a telephone call to re-raise the limits.  Based on the investigation thus far I believe that MOORE-BUSH is referring to the limits on the TD Bank account that MOORE holds in trust for MOORE-BUSH.

**Exhibit G**, p. 2 (**TIII_0000483**).

### IV. The December 14, 2017 Title III Application and Affidavit

Mr. ROSARIO never ceased to be a "Target Subject" throughout the duration of the investigation for which the Title III Orders were obtained.[15]  Each of the Title III Orders was directed at him, even though he was not named as a person for whom the government possessed probable cause to believe that he was engaged in the offenses that were the subject of the wiretaps - the government having been rebuffed with regard to initial effort.  Under the unique circumstances of this case, all of the wiretap evidence and derivative evidence is inadmissible at Mr. ROSARIO's trial because "it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act."  18 USC § 3504; 18 USC § 2518 (10)(a)(i); see, *Carpenter v. United States,* 138 S.Ct. 2006, 2014 (2018).

---

[15] The term "Target Subject" falls squarely within the meaning of "aggrieved person", that is, "a person against whom the interception is directed."  18 USC § 2510 (11).

The warrantless interception of communications of Mr. ROSARIO, Daphne MOORE, and Joshua FOSTER was unlawful. The original Title III Order, 11/09/17, on its face, specifically prohibited interception of the communications of these three (3) people for lack of probable cause. **Exhibit A** and **Exhibit B,** p. 2. The exploitation of these unlawful acts led to the issuance of subsequent Title III Orders, search warrants for Mr. ROSARIO's home and cell phones and the seizure of physical evidence such as FOSTER's alleged drug ledger.

Extensive research has failed to turn up a single case that validated a search where the judge presented with the warrant application had made (and explained) a finding of no probable cause. In this case, the court is faced with intentional and thoroughgoing unlawful intercepts. *United States v. Cole*, 807 F.2d 262 (1st Cir. 1986).

## CONCLUSION

Wherefore, the Defendant Oscar ROSARIO hereby respectfully requests that this Honorable Court suppress all unlawfully intercepted wire, oral, and electronic communications and all evidence derived directly or indirectly therefrom.

Respectfully submitted,

OSCAR ROSARIO, Defendant

_/s/ Alan J. Black_

By: Alan J. Black, His Attorney
Law Offices of Alan J. Black
48 Round Hill Road, Suite 1
Northampton, MA 01060
Phone: (413) 732-5381

Fax: (413) 739-0446<br>BBO# 553768

## CERTIFICATE OF SERVICE

I, Alan J. Black, counsel for the Defendant, hereby certified that I have served a copy of the foregoing electronically via CM/ECF Electronic Filing System on all parties involved this 22nd day of April, 2019.

____/s/_ Alan J. Black_____<br><br>Alan J. Black, BBO#553768