UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 18-30001-WGY |
| v. | ) | |
| | ) | |
| (2) NIA MOORE-BUSH, | ) | |
| a/k/a "Nia Dinzey," | ) | |
| (6) DAPHNE MOORE, | ) | |
| (7) OSCAR ROSARIO, | ) | |
| a/k/a "O," | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANTS MOTIONS
TO SUPPRESS WIRETAP EVIDENCE (Docket Entry Nos. 319, 325, and 356)

The United States of America, by and through its attorneys, United States Attorney

Andrew E. Lelling and Assistant United States Attorney Katharine A. Wagner and Amy Harman

Burkart, respectfully requests that the Court deny motions to suppress wiretap evidence filed by

defendants Nia Moore-Bush (Docket Entry No. ("DE") 356), Daphne Moore (DE 325), and

Oscar Rosario (DE 319)[1].  Though filed independently, the three motions raise essentially the

same claim:  that because the authorizing District Court Judge did not find probable cause as to

five individuals named as Target Subjects in the government's Title III application, any

subsequent interception of those five individuals' communications over the cellular phone named

in the District Court Judge's authorizing order should be denied.  However, because the

defendants' claim is based on the faulty premise that the Order precluded the interception of

---

[1] The government understands that defendant Rosario intends to plead guilty to the charges against him and, upon doing so, withdraw his pending motion (DE 319).  However, the government responds to that motion here out of an abundance of caution and because it is in almost all respects identical to the motion filed by defendant Moore (DE 325).

pertinent communications involving these individuals, the motions should be denied.  The government's interception of pertinent communications between these five individuals and Target Subjects named in the Order occurring over the telephones listed in the Order was consistent with both a plain reading of the District Court Judge's Order, Title III, and applicable case law.  Likewise, the government's service of notice of the Title III interception to the defendants complied with Title III and the Court's order and to the extent that it did not, it did not prejudice the defendants and therefore does not warrant suppression.

    I.    <u>Background</u>

        A.  <u>Origin of the Investigation</u>

In January 2017, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") began investigating defendants Nia Moore-Bush and Dinelson Dinzey for trafficking firearms from Vermont to Springfield, Massachusetts, for resale on the streets.  An ATF cooperating witness purchased six firearms on two occasions, first from Moore-Bush in February 2017 and then from Dinzey in May 2017.  In the course of setting up and consummating these deals and others that did not come to fruition, the ATF cooperating witness discussed with Dinzey and Moore-Bush their drug distribution activities.  Moore-Bush and Dinzey told the ATF cooperating witness, consensually recorded phone calls, in-person meetings, and text messages that they were trafficking narcotics, including heroin, to Vermont and firearms from Vermont to Springfield. (*See generally* Affidavit of ATF SA Christopher M. Bzduch dated November 9, 2017, Def.'s App. A2.)

ATF, later joined by the Internal Revenue Service Criminal Investigations ("IRS-CI"), conducted an extensive investigation into Moore-Bush's and Dinzey's phone activity, bank records, car rental history, and hotel expenditures.  These revealed that Moore-Bush and Dinzey

made frequent trips to Vermont and communicated by phone with each other and others known to law enforcement to be engaged in drug dealing.  (*See generally* Affidavit of ATF SA Christopher M. Bzduch dated November 9, 2017 (hereinafter, "Bzduch 11/9/17 Aff."), Def.'s App'x Ex. A2.)  ATF identified defendant Rosario as an individual with whom both Moore-Bush and Dinzey had frequent phone contact and discovered that a Federal Bureau of Investigations ("FBI") informant had made controlled heroin purchases from Rosario in February and March 2017.  (*See* Bzduch 11/9/17 Aff. at 22, Def.'s App'x Ex. A2, at 117–20.)

ATF and IRS conducted an extensive investigation of bank accounts used by Moore-Bush and Dinzey.  This financial investigation revealed that Moore-Bush and Dinzey were using three accounts held by Moore-Bush's mother, defendant Daphne Moore, in trust for Moore-Bush.  Beneficiaries of trust accounts, as Moore-Bush was here, do not have access to nor are they signatories to trust accounts.  These accounts—one at Bank of America and two at TD Bank—were primarily funded by cash deposits.  The majority of the TD Bank accounts' cash deposits were in amounts under $10,000 and made at TD Bank branches in Vermont.  TD Bank surveillance records revealed that Moore-Bush and others such as Jamieson Gallas and Tracy Parsons made these cash deposits.  TD Bank records also revealed that the deposit slips submitted to the bank in Vermont were in the name of Daphne Moore but not made by Daphne Moore.  (*See* Bzduch 11/9/17 Aff., Def.'s App'x Ex. A2, at 104–12.)

B. Title III Applications, Orders, and Interception

Due to the nature of the claimed error asserted by and mistakes of fact recited by the defendants in their motions, a detailed history of the government's applications for Title III intercept authority, the Court's resulting orders granting such authorization, and the notice provided to the defendants of such interception is warranted.

In November 2017, ATF sought Court authorization to intercept two cellular phones used by Moore-Bush and Dinzey:  (413) 372-3312, used by Moore-Bush ("Target Telephone 1"), and (802) 495-8549, which had been used by both Moore-Bush and Dinzey throughout the investigation ("Target Telephone 2").  (*See* Application for Title III Authorization dated November 11/9/17 (hereinafter, "11/9/17 App."), Def.'s App'x Ex. A1; Bzduch 11/9/17 App., Def.'s App'x Ex. A2.)  The government listed Moore-Bush, Dinzey, twelve additional proposed Target Subjects, and "others as yet unknown."  (*See* Title III Order dated November 9, 2017 (hereinafter, "11/9/17 Order"), Def.'s App'x Ex. A3, at 1–2.)  The government's 11/9/17 Application did not seek authorization to intercept the phones believed to be used by defendants Moore or Rosario and never submitted an application seeking such authorization.

The Honorable Mark G. Mastroianni, District Court Judge, reviewed the government's application and SA Bzduch's 11/9/17 Affidavit.  Judge Mastroianni indicated to the government that he was inclined not to find probable cause for five of the Target Subjects listed by the government in its 11/9/17 application:  Moore, Rosario, Ulices Guillermo, Jennifer Seals a/k/a "Jennifer Moorby," and Joshua Foster.[2]  The government submitted a memorandum outlining the facts that it believed established probable cause as to Moore, Guillermo, and Seals.  (*See* Gov't Mem. dated November 9, 2017 (hereinafter the "11/9/17 Gov't Mem."), Def.'s App'x Ex. A4.)[3]  After reviewing the 11/9/17 Gov't Mem., Judge Mastroianni declined to find that the

---

[2] In October 2018, Joshua Foster pleaded guilty to the single conspiracy count charged in the original indictment in this case.

[3] In her Motion, defendant Moore-Bush repeatedly claims that the government submitted two memoranda to the Court in support of its 11/9/17 Application.  This is entirely baseless.  The government did not submit a second memorandum in support of its 11/9/17 Application and nothing in the record supports such a claim.

4

government's 11/9/17 Application and Affidavit established probable cause that the five proposed Target Subjects were committing the Target Offenses.  Because the government anticipated that a future defendant Moore might challenge any subsequent interceptions of her if she were not listed as a Target Subject when probable cause for doing existed, the government asked for the Court to make factual findings on the record with respect to Moore only.  *See United States v. Rodrigues*, 850 F.3d 1, 6 (1st Cir. 2017) ("Under 18 U.S.C. § 2518(1)(b)(iv), 'a wiretap application must name an individual if the Government has probable cause to believe that the individual is engaged in the criminal activity under investigation and expects to intercept the individual's conversations over the target telephone.'") (quoting *United States v. Donovan*, 429 U.S. 413, 431 (1977)).  Judge Mastroianni did so.  (*See* 11/9/17 Tr., Def.'s App'x Ex. A5, at 2–3 ("The government has I think very appropriately requested if I could provide them with an explanation to give them some insight into my evaluation of probable cause as to Daphne[] Moore only given the government's effort and belief of her involvement [and] my finding differently on the issue of probable cause.").)

Following the recitation of facts memorialized on the record, the Court granted the 11/9/17 Order authorizing the interception of Target Telephones 1 and 2 and listing Moore-Bush, Dinzey, seven of the government's proposed Target Subjects as listed in the 11/9/17 Application, and "others as yet unknown."  *Id.*  In issuing the 11/9/17 Order, Judge Mastroianni by hand crossed out the names of defendants Moore, Rosario, Foster, Guillermo, and Seals on the proposed Order that the government had submitted to the Court with its 11/9/17 Application.  *Id.*

On November 14, 2017, ATF began intercepting pertinent communications occurring over Target Telephones 1 and 2 consistent with the limitations provided in the 11/9/17 Order. Consistent with the 11/9/17 Order, ATF submitted a letter to the Court within ten days of

initiating interception (commonly called a "10 day letter").  (*See* Letter dated November 22, 2017 (hereinafter 11/9/17 10 Day Letter"), Def.'s App'x Ex. D1.)  In this letter, the government openly and promptly reported to the authorizing Court that ATF had intercepted pertinent communications between Moore-Bush (listed as a Target Subject in the 11/9/17 Order) and Moore, Rosario, and Foster occurring on Target Telephone 1 (a facility listed in the 11/9/17 Order).  *Id.*  Judge Mastroianni did not instruct the government that such interceptions were contrary to the 11/9/17 Order, as indeed they were not.  On December 4, 2017, the government submitted another 10 day letter to the Court reporting on its compliance with the 11/9/17 Order and the interceptions occurring pursuant to it.  (*See* Letter dated December 4, 2017 (hereinafter, the "12/4/17 10 Day Letter"), Def.'s App'x Ex. D2.)  Again the government reported pertinent conversations involving one of the proposed Target Subjects crossed out in the 11/9/17 Order (Foster).  And, again, Judge Mastroianni did not instruct the government that such interceptions were contrary to the 11/9/17 Order, as indeed they were not.

On November 27, 2017, the government submitted an application and supporting affidavit seeking authorization to intercept (413) 372-3422 ("Target Telephone 3A"), a cellular telephone used by Dinzey.  (*See* Title III Application dated November 27, 2017 (hereinafter, the "11/27/17 App."), Def.'s App'x Ex. B1; Affidavit of SA Bzduch dated November 27, 2017 (hereinafter, "Bzduch 11/27/17 Aff."), Def.'s App'x Ex. B2.)  In its 11/27/17 Application and Affidavit, the government listed Foster as a proposed Target Subject and included a footnote acknowledging the Court's prior declination to find probable cause that Moore, Rosario, Guillermo, and Seals were engaged in the Target Offenses.  (*See* 11/27/17 App., Def.'s App'x Ex. B1, at 2 n.1; Bzduch 11/27/17 Aff., Def.'s App'x Ex. B2, 8 n.1.)  SA Bzduch's 11/27/17 Affidavit described and transcribed intercepted pertinent calls between Moore-Bush and/or

Dinzey and Foster, Moore, and Rosario.  (See Affidavit of Linda Thompson, Esq., Def.'s App'x Ex. J, at 2–3 (collecting citations).)

On November 27, 2017, Judge Mastroianni issued an order authorizing interception of Target Telephone 3A and listing Moore-Bush, Dinzey, Foster, and a number of others as Target Subjects for which he found probable cause that they were both committing the Target Offenses and would be intercepted doing so over Target Telephone 3A.  (See Title III Order dated November 27, 2017 (hereinafter, "11/27/17 Order"), Def.'s App'x Ex. B3.)  Moore and Rosario were not listed as Target Subjects.  Id.  In its two 10 day letters submitted pursuant to the 11/27/17 Order, the government reported the interception of multiple pertinent communications between Dinzey (a listed Target Subject) and Rosario and Guillermo occurring over Target Telephone 3A and its successor phone, (413) 507-1592 ("Target Telephone 3B").[4]  (See Def.'s App'x Exs. E1, E2.)  Despite being aware that the government was intercepting pertinent communications of Moore, Rosario, and others struck from the original 11/9/17 Order, the Court did not direct the government to cease such interceptions or inform the government that such interceptions were contrary to the Court's authorizing 11/9/17 and/or 11/27/17 Orders.

On December 14, 2017, the government submitted an application to Judge Mastroianni seeking to extend the previously granted authorization to intercept Target Telephone 1 and seeking authorization to intercept cellular phone (802) 369-9564 ("Target Telephone 4").  (See Title III Application dated December 14, 2017 (hereinafter, the "12/14/17 App."), Def.'s App'x Ex. C1.)  This application sought to list Rosario as a Target Subject and included a footnote

---

[4] During the course of the authorized interception, Dinzey changed phone numbers but maintained use of the same physical cellular device.  Accordingly, ATF continued interception of the new number on the old device as authorized by the 11/27/17 Order.  (See 11/27/17 Order, Def.'s App'x Ex. B3, at 7.)

outlining the Court's prior finding with respect to Moore.  (*See* 12/14/17 App., Def.'s App'x Ex. C1, at 2 & n.1; Affidavit of SA Bzduch dated December 14, 2017 (hereinafter, the "Bzduch 12/14/17 Aff."), Def.'s App'x Ex. C2, at 10 n.2.)  Again SA Bzduch's 12/14/17 Affidavit described and transcribed intercepted pertinent calls between Moore-Bush and/or Dinzey and Foster, Moore, and Rosario.  (See Affidavit of Linda Thompson, Esq., Def.'s App'x Ex. J, at 2–3 (collecting citations).)  Interception of Target Telephone 3B expired on December 27, 2017.

On December 14, 2017, Judge Mastroianni issued an order authorizing continued interception of Target Telephone 1 and the interception of Target Telephone 4 and listing Moore-Bush, Dinzey, Foster, Rosario, and a number of others as Target Subjects for which he found probable cause that they were both committing the Target Offenses and would be intercepted doing so over Target Telephones 1 and/or 4.  (*See* Title III Order dated December 14, 2017 (hereinafter, "12/14/17 Order"), Def.'s App'x Ex. C3.)  Moore was not listed as a Target Subject. *Id.*  In its two 10 day letters submitted pursuant to the 12/14/17 Order, the government reported the interception of multiple pertinent communications between Moore-Bush (a listed Target Subject) and Moore and Guillermo occurring over Target Telephone 1.  (*See* Def.'s App'x Exs. F1, F2.)  Despite being aware that the government was intercepting pertinent communications of Moore and Guillermo, both of whom Judge Mastroianni struck from the original 11/9/17 Order, the Court did not direct the government to cease such interceptions or inform the government that such interceptions were contrary to the Court's authorizing 11/9/17, 11/27/17, and/or 12/14/17 Orders.  Interception of Target Telephones 1 and 4 expired on January 12, 2018.

C.   The Original Indictment and Arrests

On January 12, 2018, the government unsealed a single-count indictment charging Moore-Bush, Dinzey, Foster, Gallas, and Parsons with conspiracy to distribute and possess with

intent to distribute heroin and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(iii).  (DE 1, 28, 29.)  Foster subsequently pleaded guilty to the original indictment.  (DE 169.)

      D.  Notice of Title III Interception

Following arrest and arraignment of the five defendants on January 12, 2018, the government presented substantial evidence of the Title III authorization and interception at an evidentiary detention hearing on January 22, 2018.  (DE 47.)  Defendants Moore-Bush, Dinzey, Gallas, Parsons, and their counsel were present at this hearing when the witness testified as to which phones were intercepted during which days and when several intercepted calls were played in open court.  (DE 47.)  On February 22, 2018, the government disclosed the Title III intercepts, applications, orders, and affidavits to all five defendants.  (DE 74–78.)

On May 17, 2018, the government emailed a copy of the inventory notice to counsel of record for defendant Moore, Linda Thompson, Esq.  On June 18, 2018, SA Bzduch served Rosario with an inventory notice.  (*See* Def.'s App'x Ex. K1.)

More than six months later, on December 20, 2018, a federal grand jury returned a twenty-four count Superseding Indictment charging defendants Moore-Bush, Moore, Rosario, and five others with narcotics, money laundering, firearms, and/or false statements offenses. (DE 206.)  The Superseding Indictment added four new defendants—Moore, Rosario, Amanda Atkins, and Luis Niko Santos—and twenty-three additional counts.  *Id.*  On the same day, Judge Mastroianni issued an order recusing himself from the matter.  (DE 211.)

On December 21, 2018, defendants Rosario, Moore, and Amanda Atkins were arrested and arraigned on the Superseding Indictment.  (DE 223, 228.)  At the arraignments, the government provided the new defendants with the discovery previously produced to the original

five defendants, including the Title III discovery.

II.     Argument

Defendants Moore, Rosario, and Moore-Bush urge this Court to take the drastic measure of suppressing all of the communications intercepted pursuant to the 11/9/17, 11/27/17, and 12/14/17 Orders on the single ground that the government willfully violated the 11/9/17 Order by intercepting communications of individuals whom Judge Mastroianni declined to name as Target Subjects and, therefore, crossed out of the 11/9/17 Order and all subsequent interceptions are suppressible as fruit of the poisonous tree.  The defendants, without any support for their claim, rest their entire argument on a misrepresentation of the 11/9/17 Order, that is, that by crossing out certain individuals, Judge Mastroianni forbade *any* interception of those five individuals, pertinent or not.  This interpretation of the 11/9/17 Order is entirely without support in law or in fact and, for the foregoing reasons, the plain language of the Order, Title III, and its interpreting case law establishes that the 11/9/17 Order authorized the interception of pertinent communications between the listed Target Subjects (including Moore-Bush and Dinzey) and the five individuals crossed out as Target Subjects of the 11/9/17 Order (including Moore, Rosario, and Foster) that occurred over the Target Telephones.  And, because the 11/9/17 Order authorized the interceptions of Moore, Foster, and Rosario, the defendants' claims of deficient inventory notice and failure to minimize those interceptees' communications also must fail.  The Court, therefore, should deny the defendants' motions.

When considering the defendants' motions to suppress the Title III intercepts, it is also helpful to understand what the defendants are not claiming.  The defendants do not argue, because they cannot, that the government's Title III applications in this case supported the Court's finding of probable cause to believe that Moore-Bush and Dinzey were committing the

Target Offenses and were therefore listed as Target Subjects.  Similarly, the defendants do not

and cannot contend that the government failed to establish probable cause to support the Court's

finding of probable cause that Moore-Bush, Dinzey, and the other listed Target Subjects were

using Target Telephones to do so.  The defendants further do not and cannot argue that the

government did not make a sufficient showing of necessity to support the Court's 11/9/17,

11/27/17, or 12/14/17 Orders.  Nor do they argue that the interceptions of Moore, Rosario, and

Foster, if properly authorized, were not pertinent to the Target Offenses listed in the Orders.

And, finally, the defendants acknowledge that Judge Mastroianni's Orders authorized the

interception of other individuals for whom the government had not established probable cause

and were not listed as Target Subjects in the Orders, *i.e.*, "others yet unknown" to be engaged in

the Target Offenses and engaging in them over the Target Telephones.  (*See* 11/9/17, 11/27/17,

and 12/14/17 Orders, Def.'s App'x Exs. A3, B3, and C3, respectively.)

    A.  The 11/9/17 Order Authorized Interception of Moore, Foster, and Rosario

    The defendants argue that by crossing out certain individuals names form the 11/9/17

Order, Judge Mastroianni meant to preclude any interception of communications involving those

individuals.  This is a misreading of the plain language of the 11/9/17 Order.  Judge Mastroianni

declined to find that there was probable cause to show that those individuals were committing

the Target Offenses and therefore found that those individuals could not be listed as Target

Subjects in the Order.  By crossing out their names, Judge Mastroianni removed those names

from the paragraph as if they did not exist.  Those individuals therefore became "others as yet

unknown [to] have committed, are committing, and will continue to commit" the listed Target

Offenses.  (*See* 11/9/17 Order, Def.'s App'x Ex. A3, at 1–2.)  As defendant Moore-Bush

acknowledges in her motion (DE 356 at 10), it is long settled law that the government may

intercept pertinent communications of those, like Moore, Rosario, and Foster in the 11/9/17

Order, not yet known to be committing the Target Offenses.  *See United States v. Kahn*, 415 U.S.

143, 157 (1974) ("It necessarily follows that Congress could not have intended that the authority

to intercept must be limited to those conversations between a party named in the order and

others, since at least in some cases, the order might not name any specific party at all."); *see also*

*United States v. Donovan*, 429 U.S. 413, 435–436 (1977).

The Second Circuit address a similar factual pattern in *United States v. Figueroa*, 757

F.2d 466 (1985).  In that case, the Title III authorizing Order listed one Target Subject and "in an

abundance of caution" listed seven individuals as "possible interceptees" for whom "probable

cause d[id] not exist at th[at] time."  *Id.* at 471.  Similar to those crossed out of the 11/9/17

Order, some of the *Figeroa* "possible interceptees" were named in subsequent Title III

applications; some were not, despite being intercepted.  *Id.* at 473–75.  The government

intercepted pertinent communications involving the "possible interceptees," and reported such

interception to the issuing court, as was the case here.  The Second Circuit found that continued

interception and monitoring of the "possible interceptees" "was reasonable" because the

intercepted calls were pertinent to the offenses named in the original order.  *Id.* at 473–74.  The

five crossed off individuals in the 11/9/17 Order are analogous to those seven "possible

interceptees" in the *Figeroa* order.  Accordingly, continued interception of their calls—so long

as they were pertinent to the Target Offenses outlined in the 11/9/17 Order, as they were—was

proper.  In any event, as the *Figeroa* court also observed, all of the purportedly unlawfully

intercepted communications occurred over the facilities authorized to be intercepted and with a

listed Target Subject (Moore-Bush or Dinzey), and are therefore authorized by the 11/9/17

Order.  *See id.* at 475 ("'[T]he government need not establish probable cause as to all participants

in a conversation.  If probable cause has been shown as to one participant, the statements of the

other participants may be intercepted if pertinent to the investigation.'") (citation omitted).

Nevertheless, the defendants now appear to ask the Court to recognize a new category of potential interceptees that are precluded from any interception whatsoever, whether pertinent or not:  those potential interceptees for whom the government has identified some nexus to criminal conduct (but not enough for the Court to find probable cause) but who are not "not known" at all. To argue that the interception of those who are entirely unknown and unidentified by the government (the not-yet-knowns) is both permissible and less of an invasion of privacy than the interception of those who the government has identified and whom will therefore receive statutory notice of the privacy intrusion is simply illogical.  *See United States v. Bannerman*, Case No. 03-10370-DPW, 2005 WL 2323172, at *5 (D. Mass. Aug. 25, 2005) ("There is, if anything, a practical benefit to being a named interceptee [even if no probable cause exists as yet] rather than having your communications intercepted without first being named in the application" because such named interceptees receive statutory notice); *United States v. Milan-Colon*, Nos. S2, S3 91CR685, 1992 WL 236218, at *16 (S.D.N.Y. Sept. 8, 1992) ("Any over-inclusion in naming [potential interceptees] far from establishing cause for suppression, further the statutory policy of preventing unreasonable invasions of privacy by ensuring that such persons will be given notice of the Title III Order and any interception pursuant to [it].").

Such a holding would also put the government in an impossible position:  It would be a violation to not name an individual for whom the government believes there is probable cause, *see Rodrigues*, F.3d at 6, but by informing the issuing court of all possible interceptees that the government believes falls into that category, it would then risk precluding any interceptions if the issuing court disagrees.  Courts, cognizant of the privacy aims of Title III, have instead encouraged the government to be over-inclusive rather than under-inclusive.  "To require

identification of persons for whom probable cause exists, yet punish for naming a person for whom it does not exist would be to force passage between Scylla and Charybdis." *United States v. Rodriguez,* 606 F. Supp. 1363, 1370 (D. Mass. 1985) (Caffrey, C.J.) (finding that "[p]robable cause need not be shown for each person named in an application so long as it is shown with respect to at least one individual") (citing *United States v. Martin*, 599 F.2d 880, 885 (9th Cir. 1979)); *see also Bannerman*, 2005 WL 2323172, at *4 (collecting cases) (rejecting the argument that where an interceptee is named but no probable cause exists and observing that suppression in such circumstances "would do nothing to advance the competing policy goals Title III was designed to vitiate, namely 'protecting individual privacy,' while also 'authoriz[ing] electronic surveillance as a weapon against the operations of organized crime'").

As the authorized interceptions provided additional information supporting probable cause for Foster and Rosario, the Court added those defendants as Target Subjects. The 11/27/17 Order listed Foster as a Target Subject, and the 12/14/17 Order listed both Foster and Rosario. The government continued to list Moore as a Target Subject in its 11/27/17 and 12/14/17 applications because the government, for the reasons outlined in the 11/9/17 Memorandum, Def.'s App'x Ex. A4, believed that there was probable cause to do so. Had the government not listed her when it believed there was a sufficient showing, that in itself could have led to a violation of Title III. *See Rodrigues*, 850 F.3d at 6. However, based on Judge Mastroianni's detailed factual finding with respect to probable cause as to defendant Moore, the proposed orders submitted with the subsequent 11/27/17 and 12/14/17 Applications continued to not list her as such.[5] By continuing to list Rosario, Foster, and Moore in the government's Title III

---

[5] The failure not to list her, even if the Applications submitted supported probable cause is also permissible under Title III. *See Rodrigues*, 850 F.3d at 7 ("[T]he failure to name all target subjects or all identifiable individuals whose conversations have been overheard does not

applications, the government secured their privacy interests by ensuring that they would receive statutory notice of the interceptions.

The record of Judge Mastroianni' s oversight and monitoring of the government's compliance with the 11/9/17 Order also supports this plain reading of the 11/9/17 Order.  To the extent that the defendants accuse the government of "willfully" violating the 11/9/17 Order by intercepting Rosario, Moore, and Foster, their claim is contradicted by the record they themselves cite.  Defendants Moore and Rosario cite to all of the times that the government used the purportedly unlawful interceptions to seek subsequent authorization to intercept in the 11/27/17 and 12/14/17 Applications and quoted the unlawful interceptions in the 10 day letters. (*See, e.g.*, Thompson Aff., Def.'s App'x Ex. J.)   If the government were willfully and intentionally violating the Court's Order, surely the government would not take the first opportunity presented to it to report that purportedly unlawful interception to the court.  (*See* 11/22/17 10 Day Letter, Def.'s App'x Ex. D1.)  Likewise, had Judge Mastroianni intended that the 11/9/17 Order preclude *any* interception of the crossed out individuals, he surely would have directed the government to cease such interception immediately.  *See United States v. Chimera*, 201 F.R.D. 72, 78 (W.D.N.Y. 2001) (noting that 10 day "reports are for the benefit of the issuing judge in monitoring compliance with the order"); *United States v. Rose*, Case No. 11-CR-10062-NMG, Order, 2012 WL 1744757, at *1 (May 16, 2012) (Boal, M.J.) (observing that 10 day "reports allow possible abuses to be detected and halted by the court, thereby furthering Congress' intent to limit the extent of court authorized intrusions of the privacy of oral communications.")  Instead, the government repeatedly informed Judge Mastroianni of those interceptions, and Judge Mastroianni continued to grant authorization to intercept on that basis.

---

automatically required suppression.") (citing *Donovan*, 429 U.S. at 439).

Because the 11/9/17 Order authorized the interceptions of Foster, Moore, and Rosario, the defendants' claim that subsequent interceptions should be suppressed and the Superseding Indictment dismissed because they are fruits of the poisonous tree should be denied.

    B.  <u>The Defendants Make No Showing of Improper Minimization</u>

The defendants point to not a single communication that was not pertinent or that should have been minimized on any other ground other than their misreading of the 11/9/17 Order. Because the 11/9/17 Order authorized interception of pertinent communications of Moore, Foster, and Rosario occurring over Target Telephone 1, the defendants claims that the government failed to adhere to minimization standards because the government failed to minimize those communications is without merit.

    C.  <u>The Defendants Received Timely Notice of the Interception</u>

The First Circuit has held that that "suppression is an appropriate remedy when a defendant can show that the failure to serve an inventory notice caused him actual prejudice and that the prejudice which resulted cannot otherwise be cured." *United States v. Harrigan*, 557 F.3d 879, 884 (1st Cir. 1977). The defendants here have made no such showing. Defendant Moore-Bush received notice of the wire interceptions at the latest on January 22, 2018 and received the Title III discovery on or about February 22, 2018. Defendant Moore received an inventory notice in May 2018, seven months before she was charged in the Superseding Indictment. Defendant Rosario received his inventory notice in June 2018, again more than six months before he was charged in the Superseding Indictment. Defendants Moore and Rosario received the Title III discovery in court on the day of their arraignment, December 21, 2018. All three have had the opportunity—as demonstrated by the instant motions to suppress—to review the supporting documentation and file motions to suppress the intercepted communications.

16

Accordingly, they cannot demonstrate any prejudice.

III.   <u>Conclusion</u>

For the foregoing reasons, Judge Mastroianni' s 11/9/17, 11/27/17, and 12/4/17 Orders authorized the interception of Foster, Moore, and Rosario, and the defendants' motions to suppress (DE 319, 325, 356) should be denied.

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

<u>*/s/ Katharine A. Wagner*</u>
KATHARINE A. WAGNER
AMY HARMAN BURKART
Assistant United States Attorneys

Counsel for the United States

Submitted:  May 6, 2019

<u>Certificate of Service</u>

May 6, 2019

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  I further certify that the government has mailed to counsel for Oscar Rosario, Daphne Moore, and Nia Moore-Bush copies of the SEALED Exhibits referenced herein.

By:     */s/ Katharine A. Wagner*_____
            KATHARINE A. WAGNER
            Assistant United States Attorney