UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 3:18-CR-30001-WGY

UNITED STATES OF AMERICA

v.

DAPHNE MOORE, et als.

DEFENDANT DAPHNE MOORE'S RENEWED MOTION
FOR EVIDENTIARY HEARING ON DERIVATIVE EVIDENCE
AND SUPPRESSION OF EVIDENCE DERIVED FROM
FRUITS OF POLE CAMERA SURVEILLANCE

Defendant Daphne Moore moves the Court for an evidentiary hearing to identify evidence derived from the fruits of the warrantless pole camera surveillance and recording of her home, her activities, her family and her guests from May 17, 2017 through mid-January 2018 at 120 Hadley Street in Springfield. She further moves for suppression of all evidence as to which the government fails to establish a source wholly independent of the fruits of the pole camera surveillance. As grounds for this motion, Defendant Moore states:

1. By order dated June 3, 2019 the Court ruled that the pole camera recording activity that the government conducted during this period constituted a warrantless search, and ordered that all evidence that directly resulted from

1

this illegality be suppressed. Document 416, pp. 24-25. The Court took no action regarding derivative evidence.

2. Disclosures by the government [since the May 13, 2019 hearing on Moore's motion to suppress] establish that the government not only used pole camera information to further its investigation, it has also used pole camera information for litigation purposes, namely, to prepare key witnesses to testify in trial[1], particularly with regard to Count Three of the superseding indictment [events of November 17, 2017]. For example:

A. In a May 20, 2019 preparation session, one trial witness was shown a photograph that was date stamped 11/17/2019 (sic) and a video clip "from the pole camera footage taken on 11/17/2017" in connection with events that allegedly occurred at Defendant Moore's home [IRS_0000355]; and

B. In a May 29, 2019 preparation session, another trial witness was shown a photograph of Defendant Moore's house as well as "pole camera footage from 11/17/17" from which the witness identified vehicles and individuals in the driveway. IRS_0000362.

Both of these sessions were used to refresh and bolster the cooperating witnesses's memories of the events depicted in the pole camera images.

3. These preparation sessions were conducted after the May 13, 2019 hearing, in which the Court alerted the government to the possibility that it

---

[1] The papers cited below document that law enforcement witnesses were involved in using pole camera video and stills to prepare the testimony of cooperating witnesses on subjects that both can be expected to testify about.

2

might find the pole camera surveillance conducted in this case to be a search, and specifically inquired of the government about the tainting effect of pole camera evidence on other aspects of the government's case. 5-13-2019Tr:35-36.

4. Defendant Moore has been unable to identify all instances of this kind of taint in the government's evidence

5.   The government's investigation activities were also tainted by information derived from its pole camera surveillance.

A. In her April 23, 2019 Motion to Suppress, Moore asserted that the government's warrantless search produced derivative evidence, and gave some examples. Paragraphs 68 and 209 of the government's November 9, 2017 Title III application reported information obtained from pole camera footage; ATF Agent Bzduch testified in the grand jury about pole camera surveillance fruits, including observations of Ms. Moore and some of her codefendants; and that pole camera footage was used to identify and investigate individuals having no apparent connection to this investigation.  Under a heading "The Pole Camera/Video Surveillance and Its Fruits should be Suppressed," Moore asserted that the pole camera surveillance was used to learn the whereabouts of co-defendants Nia Moore-Bush and Denelson Dinzey at particular times and on particular dates.  See ATF_0000506-507, attached as Exhibit C [use of pole camera to monitor suspect's activities inside vehicle]. Presumably this evidence will be offered as part of the government's conspiracy case. At page 6, Moore asserted that the pole camera fruits were employed in conjunction with the

3

wiretaps, coordinating intercepts with the view of events at 120 Hadley Street.

    B. Defendant Moore asserted that the pole camera images "must be suppressed, along with all evidence derived directly or indirectly therefrom." Motion, 7, 12-13. She requested a hearing at which the government would be required to demonstrate that the fruits of this warrantless search were admissible. Id., 12-13.

    C. The government did not challenge any of these assertions in its opposition. Document 367. It conceded that the November 9, 2017 affidavit in support of the Application for Authorization to Intercept Wire and Electronic Communications "discusses the installation of the pole camera and the results obtained at that time (Defendants Exhibit A2("Ex.A2")."

    6. The Court conducted a non-evidentiary hearing on Defendant Moore's motion to suppress on May 13, 2019. Derivative evidence was discussed only with the government, and fleetingly. The Court asked government counsel what impact an order allowing the motion would have on the government's case, and specifically, whether the wiretap warrants depend on it. 5-13-19Tr:35-36. Defendant Moore was not addressed regarding this issue. Id.

    7. In circumstances where a prior illegality has been established, "the burden of showing admissibility rests, of course, on the prosecution." *Brown v. Illinois*, 422 U.S. 590, 604 (1975). Here, the government is the party with superior knowledge of the source of its evidence, of the uses it has made of the pole camera footage and images, and the time line on which that evidence was developed. The extent to which evidence identified as possibly tainted by fruits

4

of the pole camera surveillance was derived with the aid of those illegal pole camera videos and still photos must be determined by means of an evidentiary hearing. In *United States v. Flores*, 888 F3d 537 1st Cir. 2018) the district court held an evidentiary hearing and made its findings regarding the "independent source" doctrine based in part on assessments of the credibility of witnesses.[2] Id., at 547-548; *United States v. Dessesaure*, (1st Cir. 2005).

8. The impact and influence of the fruits of the pole camera search are not easily identified in the other evidence presently known to Defendant Moore. In her motion, Moore pointed to specific indications that the pole camera fruits had been used to develop other evidence. See ¶5A, supra. Express references to pole camera-generated information are found in the November 9, 2017 wiretap affidavit [Exhibit A2 in support of the motion to suppress]: [a] ¶10 identifies it generally as one of the sources; and [b] ¶¶68, 99,135,146,147,209,210,216,313,316 and 317 assert facts that appear to be derived, directly or indirectly, from the pole camera images.

9. On January 12, 2018 SA Howe and SA Person offered Ms. Moore transportation from the Hampden Superior Court to her home, a distance of some 5 miles. 1-12-2018Tr:32. They surreptitiously recorded their interrogation of Defendant Moore in the course of that 40 minute trip. Questions and statements by the agents disclose that much of that interrogation was informed

---

[2] The government has not asserted an independent source claim, but the Court "previewed" that issue in footnote 9 of its June 3, 2019 order. Document 422.


and guided by pole camera information. See Chart A, attached.

10. In grand jury testimony, Special Agent Bzduch described the pole camera set-up to the jury and testified that he had used it to both view Ms. Moore's premises "in real time" and to review stored information to provide him a historical perspective and refresh his memory. GJ0000639-640. He and Special Agent Howe both used pole camera information to prepare for their grand jury testimonies.

11. The government has not disclosed what searches of the pole camera memory cache have been conducted, how frequently, by whom, or for what purposes.

12. The pole camera was used extensively for investigative purposes. A sample of the admitted or apparent use of the pole camera in connection with other investigative methods between November 13, 2017 and December 1, 2017 is attached as Chart B.

13. There is no reason to assume that the type of use of the pole camera video footage and stills for trial preparation was not also used similarly for investigative purposes, to prompt or assist witnesses – some of whom are acknowledged to have been addicts or heavy narcotics users during the period in which the events they supposedly witnessed or participated in occurred – in reconstructing events about which they are expected to testify.

14. The foregoing presentation establishes that there is a substantial basis for believing that the fruits of the pole camera surveillance that this Court has found to have constituted a warrantless search pervade the government's

case beyond the images produced by that activity, and that suppression of those direct fruits of that unconstitutional activity will not adequately protect Ms. Moore's Fourth Amendment and First Amendment rights, nor serve as an effective deterrent.

15. For this reason, it is imperative that the Court conduct a "taint" hearing before trial, at which the government is required to demonstrate that the evidence it intends to offer is not a fruit of the poisonous tree. *Alderman v. United States*, 394 U.S. 165, 180-185 (1969); see *United States v. Underwood*, 880 F2d 612, 616 (1st Cir. 1989)[In Fifth Amendment context, "This burden of proof . . . is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony"].

Wherefore, Defendant Daphne Moore requests that the Court convene an evidentiary hearing before trial at which the government will bear the burden of establishing that the evidence it intends to offer at trial has a legitimate source independent of the information developed through its pole camera surveillance. Defendant Moore further requests that, as to all evidence for which the government fails to establish a source wholly independent of the pole camera surveillance fruits, the Court issue an order of suppression for trial.

Respectfully submitted,
Daphne Moore, Defendant, by

/s/ Linda J. Thompson
Linda J. Thompson, Esq.
BBO# 496840
THOMPSON & THOMPSON, P.C.
1331 Main Street, Suite 320
Springfield, MA 01103

[413] 739-2100
linda@ttpclaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document will be served on counsel of record for each represented party in this action through PACER's electronic filing and service system, this 6th day of June, 2019.

/s/ Linda J. Thompson
Linda J. Thompson